**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| KELLY BLAND, on behalf of herself and others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>HEALTH CARE SOLUTIONS TEAM, LLC and KHALID MCCOMBS,<br><br>     Defendants. | Case No.: 1:24-CV-07077 |

**DEFENDANT HEALTHCARE SOLUTIONS TEAM, LLC'S
<u>ANSWER AND AFFIRMATIVE DEFENSES</u>**

Defendant Healthcare Solutions Team, LLC[1] ("HST") hereby files its Answer and Affirmative Defenses to the Complaint filed by plaintiff Kelly Bland ("Bland" or "Plaintiff"), and states as follows:

    1.    Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id. § 2(6)*, and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id. § 2(9)*.

---

[1] On March 21, 2025, the Court entered an Order granting Plaintiff's Motion to Substitute Party name. [Dkt. 28]. As such, for the purposes of this Answer, all references to former defendant The Allstate Corporation are substituted for HST.

**ANSWER**: HST states that Paragraph 1 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 1.

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.;* 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief *Id...This* private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L. C.,* 925 F.3d 643, 649-50 (4th Cir. 2019).

**ANSWER**: HST states that Paragraph 2 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 2.

3.      The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that [HST], by and through its agent Khalid McCombs, violated the TCPA by sending multiple telemarketing calls to Plaintiff and other putative class members listed on the

National Do Not Call Registry without their written consent as well as sending such calls to people who had previously asked to no longer receive them.

**ANSWER:** HST admits that Bland has sued HST and Khalid McCombs. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 3 as to McCombs, and therefore denies the same and further denies the remaining allegations of Paragraph 3.

## PARTIES

4.     Plaintiff Kelly Bland is an individual residing in the Northern District of Texas.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 4, and therefore denies the same.

5.     Defendant [HST] is a corporation that is registered to do business in the State of Illinois.

**ANSWER:** HST denies that it is a corporation as it is a limited liability company which conducts business in the State of Illinois. HST denies the remaining allegations in Paragraph 5.

6.     Defendant Khalid McCombs is an [HST] agent who resides in the Eastern District of Michigan.

**ANSWER:** HST admits that Defendant Khalid McCombs ("McCombs") is an independent agent for HST as set forth in the Independent Agent Agreement entered into by both HST and McCombs. Answering further, HST lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6 and therefore denies the same.

## JURISDICTION AND VENUE

7.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

3

**ANSWER:** Paragraph 7 contains conclusions of law as to which no response is required. To the extent a response is required, HST admits that it is subject to federal jurisdiction in the Northern District of Illinois.

8.      This Court has general personal jurisdiction over [HST] because it is headquartered and has its principal place of business in this District. This court has specific personal jurisdiction over McCombs because he is an [HST] agent and contracted with [HST] in a contract that, among other things, had an Illinois choice of law and forum provision and conducted the illegal telemarketing at issue on behalf of [HST], an Illinois corporation.

**ANSWER:** HST admits that it is subject to general personal jurisdiction in the Northern District of Illinois. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 8 as to McCombs, and therefore denies the same.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) issue were orchestrated and designed to obtain business for a company located in this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

**ANSWER:** HST admits that it is a resident of this District, and that Plaintiff has alleged that events and omissions giving rise to her claims occurred in this District. HST denies the remaining allegations in Paragraph 9. Further, to the extent that Paragraph 9 makes for a legal conclusion, HST is not required to answer, and therefore denies the same.

## BACKGROUND

**A.      The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10.      The TCPA prohibits sending multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

4

**ANSWER:** HST states that Paragraph 10 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 10.

11.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

**ANSWER:** HST states that Paragraph 11 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 11.

12.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

**ANSWER:** HST states that Paragraph 12 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 12.

13.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that sends those solicitations, or "on whose behalf" such solicitations are sent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**ANSWER:** HST states that Paragraph 13 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 13.

**B.      The TCPA requires entities to have sufficient policies in place to prevent unwanted calls before making telemarketing calls.**

14.     The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

**ANSWER:** HST states that Paragraph 14 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 14.

15.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

**ANSWER:** HST states that Paragraph 15 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 15.

16.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. In *the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

**ANSWER:** HST states that Paragraph 16 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 16.

17.    These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

**ANSWER:** HST states that Paragraph 17 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 17.

18.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

**ANSWER:** HST states that Paragraph 18 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 18.

19.     This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

**ANSWER:** HST states that Paragraph 19 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 19.

## FACTUAL ALLEGATIONS

20.     The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER:** HST states that Paragraph 20 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 20.

21.     Plaintiff Bland's telephone number, (817) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies the same.

22.     Plaintiff Bland uses the telephone number for her own personal, residential, and household needs and reasons.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies the same.

23.     Plaintiff Bland does not use the number for business reasons or business use.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies the same.

24.     The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies the same.

25.     Plaintiff Bland's number has been on the National Do Not Call Registry for years since she registered it on the Registry prior to receiving the calls at issue.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore denies the same.

26.     Despite that, Ms. Bland received at least 3 calls on November 27, 2023 from the telephone number 313-457-3157.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore denies the same.

27.     During a call, Plaintiff spoke to Defendant McCombs, who attempted to sell her an Allstate Health Solutions health insurance policy, which he described as also known as "ACA Obamacare."

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 27, and therefore denies the same.

28.     The Plaintiff also received at least three text messages from that same telephone number that same day continuing to try and sell her an Allstate Health Solutions policy and asking for her email.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 28, and therefore denies the same.

29.     Thereafter, the Plaintiff received a proposal that same day, almost an hour later, with a link to view an Allstate Health Solutions proposal. Prominently displayed together with Defendant [HST's] branding on the email was Defendant McCombs' information:



Image

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 29, and therefore denies the same.

30.    Defendant [HST] ratified McCombs's conduct by accepting the lead and referral generated as a result of McCombs's illegal telemarketing conduct and authorizing McCombs to continue contacting the Plaintiff, including through the pendency of this lawsuit.

**ANSWER:** HST denies that allegations in Paragraph 30 as to itself. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 30 as to McCombs, and therefore denies the same.

31.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any

violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act,* 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

**ANSWER:** HST states that Paragraph 31 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 31.

32.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

**ANSWER:** HST states that Paragraph 32 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 32.

33.     The FCC has instructed that sellers such as [HST] may not avoid liability by outsourcing telemarketing to agents, such as McCombs:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." *In re DISH Network, LLC,* 28 FCC Rcd. 6574, 6588 1137 (2013) (cleaned up).

**ANSWER:** HST states that Paragraph 33 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 33.

34.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

**ANSWER:** HST states that Paragraph 34 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 34.

35.     [HST] is liable for telemarketing calls placed by McCombs and which were ultimately placed with the purpose and aim of and using [HST]'s name to generate customers for [HST], including the Plaintiff.

**ANSWER:** HST denies the allegations in paragraph 35.

36.     Indeed, [HST]'s DBA, Allstate Health Solutions, was prominently featured as the company actually selling the insurance policy.

**ANSWER:** HST admits that "Allstate Health Solutions" can be seen in the email depicted in Paragraph 29 but denies that it was "prominently featured as the company actually selling the insurance policy." To the extent that Plaintiff is implying in Paragraph 36 that the reference to "Allstate Health Solutions" establishes or otherwise demonstrates that HST authorized or ratified McCombs' alleged actions, HST denies any such allegations.

37.     [HST] uses agents who it authorizes to make to [*sic*] phone calls to potential customers, vet potential clients, and educate them about and sell them [HST] insurance services.

**ANSWER:** HST denies the allegations in Paragraph 37. HST refers Plaintiff to the Independent Agent Agreement entered into by both HST and McCombs, the terms of which speak for itself.

38.     [HST] controlled the day-to-day activities of McCombs by allowing him to work up the customer service aspects and sales on its behalf and then focus on its core business, that of selling insurance.

**ANSWER:** HST denies the allegations in Paragraph 38. HST refers Plaintiff to the Independent Agent Agreement entered into by both HST and McCombs, the terms of which speak for itself.

39. [HST] authorized McCombs to use [HST]'s brand name on its calls and emails, and work up the sales and customer service aspects of its insurance services on its behalf.

**ANSWER:** HST refers Plaintiff to the Independent Agent Agreement entered into by both HST and McCombs, the terms of which speak for itself. HST denies any allegations inconsistent therewith.

40. [HST] also could have prohibited McCombs from using generating leads to numbers on its internal Do Not Call list, let alone calls placed to numbers on the Do Not Call Registry.

**ANSWER:** HST refers Plaintiff to the Independent Agent Agreement entered into by both HST and McCombs, the terms of which speak for itself. HST denies any allegations inconsistent therewith.

41. It did not.

**ANSWER:** HST refers Plaintiff to the Independent Agent Agreement entered into by both HST and McCombs, the terms of which speak for itself.

42. Finally, [HST] could have terminated McCombs once it learned of McCombs' illegal marketing conduct.

**ANSWER:** HST refers Plaintiff to the Independent Agent Agreement entered into by both HST and McCombs, the terms of which speak for itself. HST denies any allegations inconsistent therewith.

43. It did not.

**ANSWER:** HST refers Plaintiff to the Independent Agent Agreement entered into by both HST and McCombs, the terms of which speak for itself. HST denies any allegations inconsistent therewith. Answering further, HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 43 as to McCombs, and therefore denies the same.

44.     A reasonable seller would investigate why its agents were using illegal outbound telemarketing calls to sell its products to numbers which should have been on both its internal Do Not Call lists and the National Do Not Call list.

**ANSWER:** HST states that Paragraph 44 appears to call for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 44.

45.     Moreover, a reasonable seller would also investigate into the reasons why their agent would be calling numbers to numbers on the Do Not Call Registry.

**ANSWER:** HST states that Paragraph 45 appears to call for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 45.

46.     It did not.

**ANSWER:** HST denies the allegations in Paragraph 46.

47.     [HST] hired McCombs without a proper investigation, and did not terminate him when it was informed of McCombs' illegal calling conduct.

**ANSWER:** HST denies the allegations in Paragraph 47 as to itself. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 47 as to McCombs, and therefore denies the same.

48.     As such, [HST] knowingly ratified McCombs' conduct.

**ANSWER:** HST denies the allegations in Paragraph 48 as to itself. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 48 as to McCombs, and therefore denies the same.

49.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network,* 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

**ANSWER:** HST states that Paragraph 49 calls for a legal conclusion to which no response is required. To the extent that a response is necessary, HST denies the allegations in Paragraph 49.

50.     Defendant [HST]'s conduct is even more egregious because this is not the Plaintiff's first tussle with [HST].

**ANSWER:** HST denies the allegations in Paragraph 50 as to itself.

51.     In fact, the Plaintiff had previously received illegal telemarketing calls from [HST], and asked [HST] to place the same (817) XXX-XXXX number on its internal Do Not Call list. [HST] confirmed "that (817) XXX-XXXX is on the Allstate specific do not call list" as far back as May 26, 2021, but it evidently did not.

**ANSWER:** HST denies the allegations in Paragraph 51.

52.     Plaintiff never consented to receive calls from Defendants.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52.

53.     In fact, as described above, the Plaintiff explicitly revoked any purported consent to receive calls from the Defendants.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54. The calls and text messages were all placed to sell Defendant [HST]'s goods and services.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.

55. Plaintiff's privacy has been violated by the above-described telemarketing calls.

**ANSWER:** HST denies the allegations in Paragraph 55.

56. The Plaintiff never provided her consent or requested the calls.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 56.

57. The aforementioned calls to the Plaintiff were unwanted.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 57.

58. The calls were non-consensual encounters.

**ANSWER:** HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 58.

59. The Defendants had the ability to immediately honor Plaintiff's do not call requests, but they did not.

**ANSWER:** HST denies the allegations in Paragraph 59 as to itself. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 59 as to McCombs, and therefore denies the same.

60. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed.

In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

**ANSWER:** HST denies the allegations in Paragraph 60.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

**ANSWER:** HST incorporates its foregoing answers as if fully set forth herein.

62.     Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

**ANSWER:**  HST admits that Bland purports to bring this action on behalf of a class of plaintiffs; however, HST denies that this action may be properly adjudicated as a class action and further denies that Bland is entitled to any of the relief that she seeks.

63.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.

> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

**ANSWER:** HST denies that this action may be properly adjudicated as a class action and further denies that Bland is entitled to any of the relief that she seeks. Furthermore, to the extent that Paragraph 63 contains conclusions of law, no response is required and HST denies the same.

64.     Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes.

**ANSWER:** HST denies the allegations in Paragraph 64.

65.     Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

**ANSWER:** HST denies that this action may be properly adjudicated as a class action and further denies that Bland is entitled to any of the relief that she seeks. Furthermore, to the extent that Paragraph 65 makes legal conclusions, no response is required and HST denies the same.

66.     Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

**ANSWER**: HST denies the allegations in Paragraph 66.

67.     This Class Action Complaint seeks injunctive relief and money damages.

**ANSWER:** HST denies that Bland is entitled to any of the relief that she seeks.

68.     The Classes, as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

**ANSWER:** HST denies the allegations in Paragraph 68.

69.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds as the calls were sent in a generic fashion.

**ANSWER:** HST denies the allegations in in Paragraph 69.

70. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

**ANSWER:** HST denies the allegations in Paragraph 70.

71. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

**ANSWER:** HST denies the allegations in Paragraph 71.

72. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

**ANSWER:** HST denies the allegations in Paragraph 72.

73. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

  a. Whether Defendants sent multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

  b. whether Defendants recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

  c. Whether Defendants' conduct constitutes a violation of the TCPA; and

  d. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

**ANSWER:** HST denies the allegations in Paragraph 73.

74. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes because the Plaintiff has no interests which are antagonistic to any member of the Classes.

**ANSWER:** HST denies the allegations in Paragraph 74.

75. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

**ANSWER:** HST denies the allegations in Paragraph 75.

76. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

**ANSWER:** HST denies the allegations in Paragraph 76.

77. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**ANSWER:** HST denies the allegations in Paragraph 77.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

78. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

**ANSWER:** HST  incorporates its foregoing answers as if fully set forth herein.

79. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple

violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

**ANSWER:** HST denies the allegations in Paragraph 79 as to itself. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 as to McCombs, and therefore denies the same.

80. Defendants' violations were negligent, willful, or knowing.

**ANSWER:** HST denies the allegations in Paragraph 80 as to itself. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 as to McCombs, and therefore denies the same.

81. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

**ANSWER:** HST denies the allegations in Paragraph 81 as to itself. Further, HST denies that Plaintiff is entitled to any relief. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 as to McCombs, and therefore denies the same.

82. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending telemarketing calls, including

calls, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**ANSWER:** HST denies the allegations in Paragraph 82 as to itself. Further, HST denies that Plaintiff is entitled to any relief. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 as to McCombs, and therefore denies the same.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d) on behalf of Plaintiff and the Internal Do Not Call Registry Class)**

83.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

**ANSWER:** HST incorporates its foregoing answers as if fully set forth herein.

84.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

**ANSWER:** HST denies the allegations in Paragraph 84 as to itself. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 as to McCombs, and therefore denies the same.

85.     Defendants' violations were negligent, willful, or knowing.

**ANSWER:** HST denies the allegations in Paragraph 85 as to itself. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 as to McCombs, and therefore denies the same.

86. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

**ANSWER:** HST denies the allegations in Paragraph 86 as to itself. Further, HST denies that Plaintiff is entitled to any relief. HST lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 as to McCombs, and therefore denies the same.

**WHEREFORE,** Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from sending calls or calls soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D. Such other relief as the Court deems just and proper.

**ANSWER:** HST denies that Plaintiff is entitled to any of the relief sought in this Prayer for Relief. HST further denies all allegations not specifically addressed above and denies that Plaintiff is entitled to any relief whatsoever.

**WHEREFORE**, having fully answered or otherwise responded to the allegations in Plaintiff's Complaint, HST prays that: (1) Plaintiff's Complaint be dismissed in its entirety and with prejudice, with all costs taxed against Plaintiff; and (2) it recover such other relief and additional relief as the Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiff, HST pleads the following defenses to the Complaint:

### First Affirmative Defense
**(Estoppel/Waiver/Unclean Hands)**

All or some of Plaintiff's claims are barred by the doctrine of estoppel, waiver, and/or unclean hands.

### Second Affirmative Defense
**(Failure to State a Claim - TCPA)**

Plaintiff fails to state a claim under the TCPA against HST upon which relief can be granted. Plaintiff fails to allege any specific conduct by or on behalf of HST required to state a claim under the TCPA. Moreover, Plaintiff fails to allege any damages or concrete harm resulting from her receipt of the calls alleged in the Complaint.

### Third Affirmative Defense
**(Causation)**

Plaintiff's claims against HST are barred in whole or in part because HST did not cause any of Plaintiff's alleged harm. HST did not make the calls of which Plaintiff complains. The calls alleged in the Complaint were allegedly made by McCombs, an independent agent. To the extent these calls took place, HST did not have control over McCombs or otherwise authorize or ratify his alleged actions to establish vicarious liability under federal common law. *See In the Matter of the Joint Petition Filed by Dish Network LLC, the United States of Am., & the States of California,*

*Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6574 (2013).

**Fourth Affirmative Defense**
**(Lack of Concrete Harm – Lack of Standing)**

Plaintiff cannot establish concrete harm. Plaintiff alleges that the calls by McCombs violated Plaintiff's privacy, "annoyed and harassed" her, and "occupied [Plaintiff's] telephone lines" causing them to be unavailable for legitimate communication. These types of allegations do not rise to the level of concrete harm required to confer Article III standing to sue in federal court.

**Fifth Affirmative Defense**
**(Lack of Private Right of Action – 47 C.F.R. § 64.1200(d))**

Plaintiff's claims rely on 47 C.F.R. § 64.1200(d), which does not create a private right of action.

**Sixth Affirmative Defense**
**(Failure to Meet Class Action Requirement)**

All or some of Plaintiff's claims may be barred, in whole or in part, by Plaintiff's failure to meet the class action prerequisites for certification and maintenance of a class action. Plaintiff's Complaint fails to meet the class action prerequisites for maintenance of a class action, including the elements of numerosity, commonality, typicality, adequacy of representation, predominance of common questions of law and fact over individual issues, ascertainability, and superiority over other methods of adjudication.

### Seventh Affirmative Defense
### (Failure to Mitigate/Causation)

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate her alleged damages. Plaintiff's claims may be barred, in whole or in part, because Plaintiff's own conduct played a role in creating her damages.

### Eighth Affirmative Defense
### (Compliance)

At all relevant times, HST's policies, practices, and conduct with respect to telemarketing by its exclusive agents, who are independent contractors, have been in compliance with the provisions of the TCPA and all other applicable statutes, regulations, agency decisions, and interpretive case law.

### Ninth Affirmative Defense
### (Failure to Establish Vicarious Liability)

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to establish that HST is vicariously liable for McCombs' actions. HST is not liable to Plaintiff for the acts or omissions of McCombs, who is not an HST employee; rather, McCombs is an independent contractor. Furthermore, even if McCombs was an HST employee, such actions or omissions were beyond the scope of employment.

### Tenth Affirmative Defense
### (Attorneys' Fees)

Plaintiff is barred from recovering attorneys' fees, which are not recoverable under the TCPA.

### Eleventh Affirmative Defense
**(Consent)**

Plaintiff's claims are barred, in whole or in part, because at all times, Plaintiff and/or any putative class members provided express or implied consent to Defendants' conduct, as described in Plaintiff's complaint including, but not limited to, by providing his or her telephone numbers and agreeing to receive text messages and emails. The Complaint and each cause of action contained therein are barred as a matter of law.

### Twelfth Affirmative Defense
**(Consent – Established Business Relationship)**

Plaintiff's claims are barred to the extent Plaintiff and/or any putative class members consented to receive telephone calls as alleged in the Complaint. Plaintiff's claims are barred to the extent that some, or all, of the putative class members had an established business relationship with HST. The TCPA and its regulations do not prohibit calls to persons whom the seller has an established business relationship. *See* 47 C.F.R. § 64.1200(f)(5)(i), (f)(14)(ii). "The seller is entitled to call a consumer based on its [established business relationship] when a customer." *Wolfkiel v. Intersections Ins. Services Inc*., 303 F.R.D. 287, 291 (N.D. Ill. 2014) ( 18 F.C.C.R. 14014, ¶ 118 (F.C.C. 2003). "The [established business relationship] may extend to third parties in limited cases. For example, where a company hires third-party telemarketers to market its own services and products, the telemarketers may rely on the seller's [established business relationship] to call an individual consumer." *Id.* (citing 18 F.C.C.R. 14014, ¶ 116 (F.C.C. 2003).

### Thirteenth Affirmative Defense
**(Equitable Estoppel)**

By conduct, representations, and omissions, Plaintiff is equitably estopped from asserting any claim for relief against HST.

### Fourteenth Affirmative Defense
**(Post-*Chevron* Deference)**

Plaintiff's claims are barred because the interpretation and regulations imposed by the Federal Communications Commission (the "FCC") are not reasonable and are not entitled to judicial deference, including with respect to application of the Hobbs Act. This includes, but is not limited to, the FCC's interpretations with respect to whether text messages are subject to liability under the TCPA. *See Loper Bright Enters. v. Raimondo*, 603 U.S. ___ (2024); *True Health Chiropractic, Inc. v. McKesson Corp.*, No. 22-15710, 2023 WL 7015279 (9th Cir. Oct. 25, 2023), *cert granted* (U.S. Oct. 4, 2024) (No. 23-1226).

### Fifteenth Affirmative Defense
**(Additional Defenses)**

HST reserves the right to amend these defenses and to any such other additional defenses, cross-claims, counter-claims, or third-party claims as they may become known during the pendency of this action.

WHEREFORE, HST requests that the Court enter judgment in its favor, dismiss Plaintiff's Complaint in its entirety, and award HST its reasonable attorneys' fees and costs and such further relief as this Court deems just and appropriate.

Dated: April 16, 2025

Respectfully submitted,

**AKERMAN LLP**

*/s/Jani K. Mikel*
**JANI K. MIKEL**
Illinois Bar No. 6331445
71 South Wacker Drive, 47th Floor
Chicago, Illinois 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900
Email: jani.mikel@akerman.com
Email: elida.asa@akerman.com

- and -

RYAN ROMAN (*Admitted Pro Hac Vice*)
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Email: ryan.roman@akerman.com
Email: lauren.chang-williams@akerman.com

*Counsel for Defendant Healthcare Solutions Team, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on April 16, 2025, the foregoing document was filed with the Court's electronic filing system on the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>*/s/ Jani K. Mikel*</u>
JANI K. MIKEL
Illinois Bar No. 6331445